UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JOERY DORSAINVIL,                                                   :
                                                                   :
                                    Plaintiff,                     :       REPORT &
                                                                   :       RECOMMENDATION
        -against-                                                  :       19-CV-2323 (RPK) (SMG)
                                                                   :
THE CITY OF NEW YORK, MICHELLE MORRA                               :
and MICHELLE GERLICK,                                              :
                                                                   :
                                    Defendants.                    :
------------------------------------------------------------------- x
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Joery Dorsainvil brings this action against the City of New York and New York

City Police Department ("NYPD") detectives Michelle Morra and Michelle Gerlick (collectively

"defendants") pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983, 1988.  Third Am. Compl.[1]

("TAC") at 1, Dkt. 43.  Specifically, plaintiff asserts under the Fourth and Fourteenth

Amendments false arrest, false imprisonment, malicious prosecution, fabrication of evidence,

and fair trial claims; a substantive due process claim alleging that defendants conducted a

reckless investigation; and a *Monell* claim alleging that the City failed to adequately train and

supervise defendants Morra and Gerlick.  *Id.* ¶¶ 34–86.

After defendants submitted a motion seeking partial dismissal of plaintiff's claims,

plaintiff moved on February 18, 2020, for leave to file a Fourth Amended Complaint "to

distinguish [his] claims under the Fourteenth Amendment to the United States Constitution,

regarding [his] claims related to Procedural Due Process Violations, and Substantive Due

Process Violations, and to clarify claims involving Defendant city [sic] of New York's failure to

---

[1] As described below, plaintiff has amended his original Complaint three times. The Third Amended Complaint, Dkt. 43, was filed with defendants' consent, *see* Order dated Nov. 22, 2019, and is currently the operative pleading.

properly supervise and properly train, Defendant Police Officers."  Mot. to Amend, Dkt. 55; Pl.'s Mem. in Supp. of Mot. to File Fourth Am. Compl. ("Pl.'s Mem.") at 3, Dkt. 68; *see also* Proposed Fourth Am. Compl. at 14–29, Dkt. 55-1 (Counts Five through Ten, Twelve through Fifteen).  Three days later, plaintiff filed a motion styled as one to amend/correct/supplement ("motion to supplement") his motion for leave to amend.  Mot. to Suppl., Dkt. 61.  He then filed a motion to withdraw both motions on April 1, 2020, only to re-file his motion for leave to file a Fourth Amended Complaint later that same day.  Mot. to Withdraw, Dkt. 65; Mot. to Amend, Dkt. 66; *see also* Supplemented Proposed Fourth Am. Compl. ("FAC"), Dkt. 66-1.[2]

United States District Judge Rachel P. Kovner[3] has referred plaintiff's motion to amend, supplement, and withdraw to me for a Report and Recommendation.  For the reasons stated below, I respectfully recommend denying plaintiff's motion for leave to file a Fourth Amended Complaint.  I further recommend denying plaintiff's motion to supplement and withdraw.

Defendants' motion to dismiss was not referred to me for Report and Recommendation.  Nevertheless, it raises the same issues as those that are implicated by plaintiff's motion for leave to amend.  Accordingly, I analyze each of those issues below, and I note that the reasoning underlying the recommendations made in this Report, if adopted, would warrant granting defendants' motion to partially dismiss plaintiff's Third Amended Complaint as well.

---

[2] Throughout my report I refer to and cite to this version of plaintiff's proposed Fourth Amended Complaint filed at Dkt. 66-1, rather than the version filed initially at Dkt. 55-1.
[3] This case was initially assigned to United States District Judge Ann M. Donnelly and was reassigned to Judge Kovner on February 25, 2020.

## BACKGROUND

### I.    Factual Allegations[4]

Plaintiff alleges that defendant Gerlick arrested him without probable cause on October 9, 2014, in connection with a shooting that took place on October 5, 2014.  TAC ¶¶ 14, 25, 31. Defendant Gerlick submitted a felony complaint to the Kings County Criminal Court of the City of New York stating that the victim of the shooting claimed that plaintiff was the shooter.  *Id.* ¶ 25.  Once in police custody, plaintiff was questioned by defendant Morra, who, plaintiff contends, "fabricated a false confession/admission, claiming that the Plaintiff confessed—or admitted—to shooting the victim."  *Id.* ¶ 17.  Plaintiff alleges that defendant Morra forwarded the fabricated confession to the Kings County District Attorney's Office and that her fabrication took place "prior to the preparation for any grand jury proceeding."  *Id.* ¶¶ 20, 79.  Notice of the confession was served by the prosecution at plaintiff's arraignment on October 10, 2014.  *Id.* ¶ 19.  Morra also testified before a grand jury that plaintiff had confessed to the shooting.  *Id.* ¶ 21.

However, according to plaintiff, the prosecution presented little to no evidence of his involvement in the shooting at his criminal trial in 2016.  Defendant Morra testified that she made notes during her interrogation of plaintiff but admitted that "nowhere in these [] notes does it state that the Plaintiff admitted to shooting the [victim]."  *Id.* ¶ 24.  Morra further testified that she and Gerlick were unable "to see—or speak with—[the victim]" on October 5, 2014.  *Id.* ¶ 26. Defendant Gerlick testified that when she visited the victim of the shooting at the hospital on

---

[4] Plaintiff's proposed Fourth Amended Complaint expands his existing legal claims but includes the same factual allegations, numbered identically, as the Third Amended Complaint.  *See* TAC ¶¶ 14–33; FAC ¶¶ 14–33.  This factual summary is therefore drawn entirely from the factual allegations that appear both in the operative Third Amended Complaint and the proposed Fourth Amended Complaint.

October 6, 2014, the victim "could not talk, and…did not tell her that the Plaintiff shot him." *Id.* ¶ 27. Finally, the victim testified at plaintiff's criminal trial that "he never told any New York Police Detective—including the Defendant Detectives—that the Plaintiff shot him." *Id.* ¶ 28. The victim did not testify before the grand jury, apparently "because he was unable to speak for approximately a month and a half, to two months" after the shooting on October 5, 2014. *Id.* ¶ 29.

The case against plaintiff was dismissed on the merits and sealed on April 22, 2016. *Id.* ¶ 30. Plaintiff was released from custody on the same day, after having been detained since October 9, 2014. *Id.* ¶ 16. Plaintiff brought this action on April 19, 2019. *See* Dkt. 1.

## II.    Procedural History

Though discovery has yet to begin in this case, plaintiff's repeated filings have made for an already lengthy procedural history.

### A.    Prior Filings

As noted above, plaintiff commenced this action by filing a complaint on April 19, 2019. Plaintiff filed his First Amended Complaint on August 27, 2019, Dkt. 25, his Second Amended Complaint on October 28, 2019, Dkt. 37, and his Third Amended Complaint on November 26, 2019, Dkt. 43. Defendants consented to the filing of plaintiff's Second and Third Amended Complaints, Dkt. 36, Dkt. 42, though these filings delayed defendants from moving to dismiss. *See* Order of Aug. 30, 2019 (cancelling the pre-motion conference scheduled for Sept. 4, 2019, in light of plaintiff's First Amended Complaint); Order of Nov. 13, 2019 (setting briefing schedule—only after plaintiff filed his Second Amended Complaint—for defendants' motion to dismiss from December 2019 to February 2020); Dkt. 42 (allowing plaintiff to file his Third

Amended Complaint with defendants' consent even though defendants' motion to dismiss was due in about three weeks).

In the midst of the filings made in connection with plaintiff's amended complaints, plaintiff filed a motion for sanctions based on the assertion that defendants' request for a pre-motion conference to dismiss the First Amended Complaint "was submitted to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that the legal assertions contained in defendants' application were "not warranted by existing law." Pl.'s Mot. for Sanctions ¶ 1, Dkt. 32. Judge Donnelly denied that motion at a pre-motion conference held on October 22, 2019, noting that "when parties are making good-faith arguments based on interpretation of federal law, supreme court cases, then it is really not well founded to make a motion for sanctions…[i]t wastes my time. And it wastes the defendants' time." Pre-Mot. Conf. Tr. at 12:13-17, Dkt. 49; Order dated Oct. 22, 2019. Plaintiff proceeded to file a motion for reconsideration of the Court's denial of his motion for sanctions, Dkt. 47, which he subsequently withdrew, Dkt. 54.

### B. Defendants' Motion to Dismiss and Plaintiff's Pending Motions

Defendants' motion to dismiss was fully briefed on February 6, 2020. The motion seeks partial dismissal of plaintiff's Third Amended Complaint "on the grounds that (1) plaintiff's false arrest and false imprisonment claims are barred by the statute of limitations; (2) plaintiff cannot raise an independent reckless investigation claim on substantive due process grounds; and (3) plaintiff fails to allege sufficient facts to support a municipal liability claim." Defs.' Mem. in Supp. of Mot. to Dismiss at 1 ("Defs.' Mot."), Dkt. 46.

On February 18, 2020, plaintiff filed the first of his two motions for leave to file a Fourth Amended Complaint. See Dkt. 55. On February 20, 2020, plaintiff requested a pre-motion

conference regarding that motion.  Dkt. 58.  On February 21, 2020, plaintiff filed a motion to supplement his motion for leave to file a Fourth Amended Complaint.  Mot. to Suppl.  His motion to supplement proposes to add an additional Fourteenth Amendment procedural due process claim, which plaintiff contends was "inadvertently omitted" from the proposed Fourth Amended Complaint that he initially filed.  *Id.* at 1.

While plaintiff's motion to amend and motion to supplement were pending, and less than a week after Judge Kovner referred those motions to me for Report and Recommendation, plaintiff moved to withdraw his motion for leave to file his Fourth Amended Complaint and its related filings because the prior motion was "defective, in that…[t]here was no affidavit attached to the Motion for Leave to File a Fourth Amended Complaint" in violation of Local Rule 7.1(a)(2).  Mot. to Withdraw at 1.  Plaintiff then re-filed his motion to amend.  *See* Dkt. 66.  The proposed Fourth Amended Complaint attached to plaintiff's re-filed motion contains the additional count proposed in his motion to supplement.  *See* FAC ¶¶ 76–80 (Count Nine).  Judge Kovner then referred plaintiff's motion to withdraw to me.

DISCUSSION

I.    **Motion to Amend**

A party may be granted leave to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be freely given, as there is a "strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc*., 659 F.3d 208, 212–13 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  Nevertheless, the decision to grant leave to amend "is within the sound discretion of the court," *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp*., 22 F.3d 458, 462 (2d Cir. 1994), and the court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing

6

party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

     *A.  Futility*

     "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  Thus, when considering the futility of a proposed amended complaint, courts evaluate whether "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Henkel v. Wagner*, 553 F. App'x 106, 107 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) ("Courts will find 'good reason' to deny a request for leave to amend pursuant to Rule 15 where the proposed amendment is futile because, for example, it fails to state a viable legal claim or is time-barred.").  In making this evaluation, "[t]he factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor."  *Corrado v. N. Y. State Unified Court Sys.*, 2014 WL 4626234, at *6 (E.D.N.Y. Sept. 15, 2014); *see also Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 303 (E.D.N.Y. 2013) ("[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (internal quotation marks and citation omitted)).

     Here, plaintiff seeks to expand upon the legal claims already asserted in his Third Amended Complaint.  Specifically, plaintiff proposes to: 1) divide his substantive due process claim alleging reckless investigation into two counts addressing each defendant's actions separately, *compare* TAC ¶¶ 48–50 (Count Three) *with* FAC ¶¶ 81–90 (Counts Ten and Eleven); 2) split his *Monell* claim that the City provided inadequate training and inadequate supervision to

defendant police detectives into four counts alleging failure to train and failure to supervise each individual defendant, *compare* TAC, ¶¶ 58–66 (Count Five) *with* FAC ¶¶ 98–117 (Counts Thirteen through Sixteen); and 3) expand his two claims that each defendant denied his right to a fair trial into four counts—two of which invoke the right to a fair trial under the New York State Constitution, *compare* TAC ¶¶ 75–86 (Counts Eight and Nine) *with* FAC ¶¶ 56–75 (Counts Five through Eight).  Thus, the question presented to the Court is whether plaintiff's factual allegations, accepted as true, support the legal claims as amended in the Fourth Amended Complaint.  Although, as noted in the Introduction, Judge Kovner has not referred defendants' motion for partial dismissal to me for Report and Recommendation, I have considered the arguments raised by defendants in their motion papers in evaluating whether plaintiff's amended claims could withstand a Rule 12(b)(6) motion.  As explained below, I find all of plaintiff's proposed amendments futile.

### 1.   Substantive Due Process Reckless Investigation Claims

Plaintiff's proposed substantive due process claims, Counts Ten and Eleven, allege that both defendants "intentionally fabricated evidence against the Plaintiff and conducted a reckless investigation."  FAC ¶¶ 82, 87.  Plaintiff further alleges that defendants' actions "shock[] the conscience" and do "more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically."  *Id.* ¶¶ 83–84, 88–89.  Defendants assert that plaintiff's substantive due process claims, as pleaded in his Third and Fourth Amended Complaint, must be dismissed "because the underlying conduct is covered by the Fourth Amendment and because it is barred by the statute of limitations."  Defs.' Ltr. of Mar. 12 ("Defs.' Opp.") at 3, Dkt. 64; *see also* Defs.' Mot. at 5–6.

I do not reach defendants' statute of limitations contention because I agree with defendants that the conduct referred to in plaintiff's claims may not be asserted under the substantive due process clause of the Fourteenth Amendment.  "[T]he Supreme Court has repeatedly held that '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Bryant v. Steele*, 25 F. Supp. 3d 233, 246 (E.D.N.Y. 2014) (quoting *Bryant v. City of New York*, 404 F.3d 128, 135 (2d Cir. 2005)).  Accordingly, because claims that are "premised upon an alleged unlawful arrest and imprisonment or an allegedly malicious prosecution" are covered by the Fourth Amendment, they may not be asserted on substantive due process grounds.  *Jean-Laurent v. Bowman*, 2014 WL 4662221, at *11 (E.D.N.Y. July 7, 2014), *report and recommendation adopted*, 2014 WL 4662232 (E.D.N.Y. Sept. 18, 2014).  Plaintiff's claims, which essentially allege that defendants' reckless investigation led to his unlawful arrest and detention, are thus clearly governed by the Fourth Amendment and may not be brought under the substantive due process clause.  *See Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 917 (2017) (characterizing claim that plaintiff's seizure and ensuing detention was "unreasonable" because it was based on "false evidence" and not probable cause as "fit[ting] the Fourth Amendment…as hand in glove").  This conclusion does not prevent plaintiff from obtaining relief based upon defendants' alleged reckless investigation because allegations of this sort are "properly regarded as part of Plaintiff's false arrest and malicious prosecution claims," *Campbell v. City of New York*, 2019 WL 569768, at *8 n. 5 (E.D.N.Y. Feb. 11, 2019), both of which plaintiff has asserted, *see* TAC ¶¶ 34–39, 51–57 (Count One and Four).

I therefore respectfully recommend denying plaintiff's motion to amend his substantive due process claims.  Moreover, if adopted, the rationale underlying this recommendation would support granting defendants' motion to dismiss the substantive due process claim alleged in Count Three of plaintiff's Third Amended Complaint.

2.  *Monell* Claims: Failure to Train & Failure to Supervise

In his proposed amended complaint, plaintiff seeks to split his original *Monell* claim into four more specific counts alleging that the City 1) failed to train Morra, 2) failed to train Gerlick, 3) failed to supervise Morra, and 4) failed to supervise Gerlick.  FAC ¶¶ 98–117 (Counts Thirteen through Sixteen).  However, because plaintiff makes only conclusory allegations in support of these claims—even with the proposed amendments—I recommend denying this aspect of his motion to amend as futile.

A municipality may be held liable for failure to train or supervise its employee when 1) "policymaker[s] know[] 'to a moral certainty' that [their] employees will confront a given situation"; 2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or [] there is a history of employees mishandling the situation"; 3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks and citation omitted).  To plausibly allege *Monell* liability for failure to train, plaintiff "must point to an identifiable deficiency in the City's training program, which is 'closely related to the ultimate injury.'"  *Sherman v. City of New York*, 2019 WL 2164081, at *13 (E.D.N.Y. May 16, 2019) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)); *Isaac v. City of New York*, 2018 WL 5020173, at *18 (E.D.N.Y. Aug. 6, 2018) ("Even at the pleading stage, some non-conclusory allegation as to deficient training programs is necessary...."

(internal quotation marks omitted)), *report and recommendation adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018).  Importantly, plaintiff may recover only for deprivations that "occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor," a requirement that "ensure[s] that a failure to train theory does not collapse into *respondeat superior* liability."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004).

Here, though plaintiff adds much verbiage in his two nearly identical failure to train counts, the allegations do not identify any specific training deficiency.  Instead, the allegations make broad statements alleging that the City failed to teach that which is obvious: that is, that the City "failed to train [defendants] that fabricating evidence is wrong" and that their "use of unethical practices…violates the United States Constitution, the New York State Constitution, and [the] Defendant[s'] Oath of Office."  FAC ¶¶ 101(a), (g), 107(a), (f).  The absence of any detailed allegations as to how the City's training was inadequate or what training could have been provided that would have avoided the misconduct alleged by plaintiff "renders [plaintiff's] claim entirely conclusory, as he does not specify what type of training the officers lacked, and there are no facts in the complaint that support his argument that the City's alleged failure amounted to deliberate indifference."  *Sherman*, 2019 WL 2164081, at *13 (internal quotation marks and citation omitted).  Moreover, to hold a municipality liable because an officer failed to understand such basic principles as "lying is wrong" would essentially impose *Monell* liability for the ethical lapses of its individual officers.  A municipality may not, however, face liability "solely because it employs a tortfeasor."  *See Monell v. Dep't of Soc. Servs. of City of N.Y*, 436 U.S. 658, 691 (1978).

Plaintiff's failure to supervise claims fail for similar reasons.  "In order to successfully plead a claim of *Monell* liability for failure to supervise under Section 1983, a plaintiff must establish that policymakers were knowingly and deliberately indifferent to the possibility that its police officers were wont to violate the constitutional rights of arrestees." *Pizarro v. City of New York*, 2015 WL 5719678, at *9 (E.D.N.Y. Sept. 29, 2015) (internal quotation marks and citation omitted).  A city's inaction will rise to the level of "deliberate indifference" only if "the need for more or better supervision to protect against constitutional violations [is] obvious" and "no meaningful attempt to curb the unconstitutional conduct [is] made." *Id.* (internal quotation marks and citation omitted); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.")

Here, plaintiff's proposed pleading simply parrots the elements of a failure to supervise claim by alleging that the City "was deliberately indifferent, in that [it] failed to properly supervise [defendants]" and "did not provide guidelines, or practices to ensure that [defendants] would not—alone or working with others—engage in practices that violate the constitutional rights of individuals." FAC ¶¶ 111–112, 115–116.  Plaintiff alleges no facts in support of these conclusory claims.  Plaintiff's proposed Fourth Amended Complaint does not contend, for example, that the defendant detectives had a history of misconduct that presented an "obvious" need for supervision.[5]  *See Aguirre v. City of New York*, 2017 WL 4236552, at *7 (E.D.N.Y.

---

[5] The *Monell* allegations in plaintiff's proposed Fourth Amended Complaint omit a reference made in his Third Amended Complaint, *see* TAC ¶ 65(a), to prior litigation in which the City and Morra were named as defendants, *see Walker v. City of New York, et al.*, 11-cv-2739 (E.D.N.Y. filed on June 7, 2011).  The plaintiff in *Walker* accused the defendant officers of "misrepresenting…that Plaintiff has committed criminal offenses," *Walker*, Am. Compl. ¶ 11, Dkt. 5.  The case was ultimately settled without any finding or admission of liability.  *Walker*, Dkt. 12.  Thus, even if this allegation had been included in plaintiff's proposed Fourth Amended Complaint, it would not change my recommendation.  Not only are adjudications that do not result in a finding of liability insufficient to demonstrate a

Sept. 22, 2017) ("Plaintiff has not alleged enough facts to plausibly raise an inference that any failure to discipline was a result of a deliberate or conscious choice by a municipality." (internal quotation marks omitted)).  Plaintiff's proposed complaint also fails to offer any "specific facts regarding whether the City investigated or disciplined the officers," and thus "it does not adequately allege a *Monell* claim for failure to supervise."  *Isaac,* 2018 WL 5020173, at *18; *see also Demosthene v. City of New York*, 2019 WL 181305, at *10 (E.D.N.Y. Jan. 10, 2019) (rejecting plaintiff's argument that the City was "deliberately indifferent" because plaintiff "fail[ed] to demonstrate that the City's response to the allegations of misconduct was so 'superficial as to suggest that its official attitude was one of indifference to the truth of the claim.'").

Though plaintiff does allege that there is "no system in place to ensure that [defendants] could not fabricate evidence—and submit said evidence to the District Attorney's Office— without anyone, at any point, verifying the authenticity of said evidence," FAC ¶¶ 113, 117, "'the mere fact that the misconduct occurred in the first place' does not support a municipal liability claim absent evidence of the City's reaction to those claims," *Demosthene*, 2019 WL 181305, at *10 (quoting *Amnesty Am.*, 361 F.3d at 130).  In other words, without pleading *any* specific facts relating to the City's supervisory practices, there can be no reasonable inference that the City's policy, or lack of one, was the "moving force" behind the alleged violations.  *See Monell*, 436 U.S. at 694; *Aguirre*, 2017 WL 4236552, at *8 (rejecting failure to supervise allegation that did "not include sufficient facts to plausibly raise an inference that there was a

---

widespread custom or practice, *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015), *on reconsideration in part*, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015), but the existence of one prior complaint against defendant Morra—even accepted as true—does not suggest that the need to more closely supervise her was "obvious" to the City, *see Alwan v. City of New York*, 311 F. Supp. 3d 570, 582 (E.D.N.Y. 2018).

nexus between any of the purported flaws in the City's disciplinary system for police officers, the failure to discipline Defendants, and Plaintiff's arrest and prosecution.")

In an attempt to enhance his failure to train and failure to supervise claims, plaintiff has submitted a letter to the Court presenting "police records" intended to show that defendants' alleged "fabrications…are not isolated incidents."  Pl.'s Ltr. of June 26, 2020, at 1, Dkt. 70.  The records, which became available to the public following the repeal of a law which had made all personnel records of police officers confidential, *id.*, list fifty-three legal proceedings, spanning from 2008 to 2019, in which there were "judicial adverse credibility findings"; these "findings" apparently reflect instances where police officers were found to have not been truthful.  *See* Ex. 1 at 10–11, Dkt. 70-1.  Plaintiff's submission does not alter my conclusion that his *Monell* claims are futile for two reasons.  First, the list of adverse credibility findings lacks any context such as the percentage of cases over these nine years in which police officers participated that resulted in the cited adverse credibility findings.  In the absence of such information, the Court is unable to determine whether these findings reflect rare circumstances or whether there is a pervasive "pattern of misconduct" among officers that demands increased training or supervision.  *See* *Reynolds*, 506 F.3d at 192.  Second, there are no entries in the exhibit that identify either defendant as having been found to lack credibility, and the records thus fail to suggest that the City ignored any repeated violations by Morra or Gerlick.

In sum, I respectfully recommend denying plaintiff's motion for leave to amend his *Monell* claims.  Moreover, if adopted, the reasoning underlying this recommendation would support granting defendants' motion to dismiss the *Monell* claim asserted in Count Five of the Third Amended Complaint.

3. <u>Fair Trial Claims</u>[6]

Lastly, plaintiff proposes to amend his Third Amended Complaint by splitting the two claims in that pleading alleging that each defendant's conduct constituted a "Denial of [his] Right to a Fair Trial," *see* TAC ¶¶ 75–86 (Counts Eight and Nine), into two different variations of fair trial claims.  The first amended claim is labeled "Fourteenth Amendment denial of a right to a fair trial," *see* FAC ¶¶ 56–67 (Counts Five and Six, the "first set" of fair trial claims), and the second asserts a "Fourteenth Amendment procedural due process violation, based on [defendants'] acts that denied plaintiff his right to a fair trial pursuant to the New York State Constitution, *see id.* ¶¶ 68–75 (Counts Seven and Eight, the "second set" of fair trial claims). The primary allegation in each of the amended claims is that defendants deprived plaintiff of a fair trial by fabricating evidence.

"An individual suffers a constitutional deprivation of a right to a fair trial when an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Cook v. City of New York*, 243 F. Supp. 3d 332, 351 (E.D.N.Y. 2017) (internal quotation marks omitted) (citing *Jovanovic v. City of New York.*, 486 F. App'x 149, 152 (2d Cir. 2012)). Following the Supreme Court's opinion in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), courts in this District have also held that "[f]avorable termination [of a civil rights plaintiff's underlying criminal prosecution] is required for a fair trial claim insofar as it is necessary to avoid the risk that a judgment for plaintiff on his civil claim would conflict with or impugn the validity of the earlier criminal proceeding against him."  *Simon v. City of New York*, 2020 WL 1323114, at *6

---

[6] Defendants oppose the other aspects of plaintiff's motion to amend, discussed above, primarily by relying on their papers submitted in support of their motion to dismiss plaintiff's substantive due process, *Monell*, and false arrest and false imprisonment claims.  Defendants oppose these fair trial amendments primarily on the grounds of bad faith and prejudice, discussed below, and not legal futility.

(E.D.N.Y. Mar. 19, 2020), *reconsideration denied sub nom. Simon v. Cruz*, 2020 WL 2837020 (E.D.N.Y. June 1, 2020).  Notably, and in contrast to the date of accrual for false arrest and imprisonment claims,[7] *see Wallace v. Kato*, 549 U.S. 384, 391 (2007)*, McDonough* also held that the statute of limitations for this species of fabricated evidence, fair trial claim "does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor."  139 S. Ct. at 2154–55.

Plaintiff has thus plausibly alleged a fair trial claim in his Fourth Amended Complaint. In particular, plaintiff's first two fair trial claims in his Fourth Amended Complaint plead not only that that defendants forwarded false information to prosecutors, but also that the false evidence, which included defendants' statements that plaintiff admitted to shooting the victim and that the victim said plaintiff had shot him, was likely to influence the jury's verdict.  *See* FAC ¶¶ 59–60, 65–66.  The nature of the allegedly false evidence gives rise to a plausible inference that it would have affected the outcome of plaintiff's prosecution if believed.  In addition, plaintiff's charges were dismissed and, as a result, the favorable termination requirement is satisfied.  Finally, plaintiff initiated this lawsuit on April 19, 2019, less than three years after the criminal charges against him were dismissed on April 22, 2016, *see* FAC ¶ 30; his fair trial claims were therefore brought within applicable limitations period.

However, plaintiff has likewise, and for the exact same reasons, already plausibly alleged the very same fair trial claim in Count Eight and Nine of his Third Amended Complaint.  *See* TAC ¶¶ 75–86.  In fact, the only differences between the fair trial claims in the Third Amended Complaint and the first set of claims in the proposed Fourth Amended Complaint are that plaintiff seeks to change the caption from "Denial of a Right to a Fair Trial" to "Fourteenth

---

[7] False arrest claims are a "species" of false imprisonment claims; thus, the two claims are governed by the same legal principles and referred to together throughout this Report.  *See Wallace*, 549 U.S. at 388.

Amendment Denial of a Right to a Fair Trial" and to add an explicit reference to "all of the Exhibits attached to this Complaint." *Compare* TAC ¶¶ 75, 81 *with* FAC ¶¶ 56, 62.  These differences, though, have no legal consequence.  Any court reviewing the fair trial claims in the Third Amended Complaint would interpret them as asserting the exact same claims, and making the same factual allegations, as the fair trial claims made in Count Five and Six of the Fourth Amended Complaint.  Indeed, because "[f]ederal pleading rules call for [only] 'a short and plain statement of the claim showing that the pleader is entitled to relief" and not a "[]perfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (quoting Fed. Rule Civ. Proc. 8(a)(2)), it would be improper for a court to find that the Fourth Amended Complaint stated a fair trial claim but the Third Amended Complaint did not.  In addition, courts may consider exhibits attached to a Complaint even when a plaintiff does not specifically reference those exhibits in his Complaint.  *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 70 (S.D.N.Y. 2013) ("[The Court] may rely upon documents attached to the complaint as exhibits [ ] and documents incorporated by reference in the complaint.  Moreover, when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss." (internal quotation marks and citations omitted)).  Accordingly, because there is no meaningful difference between the fair trial claims asserted in plaintiff's operative and proposed pleadings and because defendants' motion for partial dismissal does not seek dismissal of these claims, leave to amend to make minor changes to the language of the first set of fair trial claims should be denied.

I further recommend denying plaintiff leave to amend his Third Amended Complaint by adding the second set of fair trial claims.  It is unclear what plaintiff intends to accomplish by asserting this second set of claims.  Plaintiff's memorandum in support of his motion for leave to amend merely states that his proposed amendments are intended to "clarify" his claims under the Fourteenth Amendment of the United States Constitution, *see* Pl.'s Mem. at 4, but offers no explanation as to how the second set of claims is not redundant in light of his two other fair trial claims, *see id.* at 9–11 (offering only conclusory assertions in support of claim that the proposed Fourth Amended Complaint is not futile).  Though the first set of fair trial claims does not explicitly reference "Procedural Due Process," as the second set does, this difference is meaningless because fair trial claims are clearly rooted in notions of Fourteenth Amendment procedural due process.  *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 627 (E.D.N.Y. 2017) ("The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, Fourteenth Amendments of the U.S. Constitution.").

Moreover, to the extent the second set of fair trial claims are not redundant because, as their caption suggests, they are premised on the New York State Constitution, they would be futile because "there is no private right of action under the New York State Constitution for claims that are remediable under Section 1983 or other state laws," such as plaintiff's fair trial claims here. *Batista v. City of New York*, 2007 WL 2822211, at *9 (S.D.N.Y. Sept. 25, 2007).  Another possible reading is that plaintiff intended to assert a separate procedural due process claim based on his alleged deprivation of liberty without due process.  Any attempt to assert a claim of this nature, though, would be futile as well.  In general, "[a] procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property

interest without first providing notice and an opportunity to be heard." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 266 (E.D.N.Y. 2015) (internal quotation marks omitted). However, "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Maldonado v. City of New Yor*k, 2014 WL 787814, at *11 (S.D.N.Y. Feb. 26, 2014) (quoting *Rivera–Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). Courts have found that fabrication of evidence claims, such as this one, are "random and unauthorized" and that, as a result, "the post-deprivation remedies for false arrest and malicious prosecution under § 1983 and state common law provide ample relief." *Maldonado*, 2014 WL 787814, at *11.

I therefore respectfully recommend denying plaintiff leave to amend his Third Amended Complaint to add a second set of fair trial claims.

### B. Undue Delay & Bad Faith

In their opposition, defendants argue compellingly that plaintiff's motion for leave to file a Fourth Amended Complaint was made in bad faith and has caused undue delay. *See* Defs.' Opp. at 2. Indeed, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, [and] repeated failure to cure deficiencies by amendments previously allowed.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182). Defendants correctly point out that "plaintiff has been aware of the grounds for the defendants' motion to dismiss since August 6, 2019, and was told by the Court "that defendants' arguments in favor of dismissal were 'well founded.'" Defs.' Opp. at 2. They further note that, "should plaintiff be allowed to file a Fourth Amended Complaint, defendants will be forced, once again, to seek leave to file yet another

motion to dismiss." *Id.* Nevertheless, because the law strongly favors resolution on the merits, *see Williams*, 659 F.3d at 212–13, I base my recommendation only on the futility of plaintiff's proposed amendments and do not reach defendants' contentions regarding bad faith or undue delay.

## II. Motion to Supplement & Withdraw

Plaintiff proposes to supplement his motion for leave to file a Fourth Amended Complaint by adding an additional count which was "inadvertently omitted" from his proposed Fourth Amended Complaint. *See* FAC ¶¶ 76–80 (Count Nine). Because plaintiff essentially seeks to further amend his proposed Fourth Amended Complaint with this motion, I review his proposal under the same standards that govern motions to amend and that are set out above.

Plaintiff's proposed additional claim, Count Nine, pleads a "Fourteenth Amendment procedural due process violation, based on the defendants' seizure of the plaintiff in violation of Article 1, Section 12 of the New York State Constitution." FAC ¶¶ 76–80. In support of this claim, plaintiff states that defendants "denied [him] Procedural Due Process – in violation of the Fourteenth Amendment to the United States Constitution – when Defendant Police Officers fabricated evidence, and seized Plaintiff …without probable cause, or arguable probable cause thereby denying [him] his rights under … Article I, section 12 of the New York State Constitution." *Id.* ¶ 79. This proposed claim, like Counts One and Two, is based on plaintiff's seizure without probable cause, an injury governed by Fourth Amendment standards. I therefore review the futility of plaintiff's Count Nine as if it were a false arrest or false imprisonment claim.[8]

---

[8] Were the Court to analyze this count as a procedural due process claim it would fail for the same reasons plaintiff's second set of fair trial claims failed: plaintiff's allegation concerns a random and unauthorized act by the government and the availability of false arrest and false imprisonment claims provides adequate post-deprivation process.

As noted above, defendants have moved to dismiss the false arrest and false imprisonment claims in plaintiff's Third Amended Complaint.  In their motion, defendants argue that these claims should be dismissed as time-barred.  The statute of limitations for false arrest and false imprisonment claims begins to run when the plaintiff, or criminal defendant in the state proceeding, "appear[s] before the examining magistrate and [i]s bound over for trial."  *Wallace*, 549 U.S. at 391.  Applying that rule here, where New York's three years statute of limitations governs, *Alvarez v. Peters*, 2020 WL 1808901, at *2 (E.D.N.Y. Apr. 9, 2020), plaintiff's claims expired three years after his arraignment, on October 10, 2017.  Plaintiff did not commence this action, though, until April 19, 2019.

Plaintiff contends that *Wallace* is no longer good law, and that his false arrest and false imprisonment claims accrued only once the criminal charges brought against him were dismissed.  Pl.'s Mem. In Opp. To Defs.' Mot. To Dismiss ("Pl.'s Opp.") at 9, Dkt. 50.  This argument misconstrues the recent Supreme Court precedent on which it relies.  Plaintiff seems to suggest that *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017), and *McDonough v. Smith*, 139 S. Ct. 2149 (2019), overruled *Wallace*.  Pl.'s Opp. at 9; *see also* Pre-Mot. Conf. Tr. at 8–10. *McDonough*, though, holds only that the statute of limitations for fabrication of evidence claims—as opposed to false arrest and false imprisonment claims—does not begin to accrue until the criminal proceedings against the defendant terminate in his favor.  139 S. Ct. at 2158; *see also id.* at 2159 (distinguishing concerns relating to the accrual of fabrication of evidence/fair trial claims from those relevant to the accrual of false arrest claims).  The Court in *Manuel* held merely that a claim for unlawful pretrial detention beyond the start of legal process was properly brought under the Fourth Amendment.  137 S. Ct. at 919.  Importantly, the Court declined to resolve the question as to "what accrual rule should govern a § 1983 suit challenging post-legal-

21

process-pretrial detention." *See id.* at 921–22.  As a result, the holding in *Wallace* that claims for false arrest and false imprisonment accrue when a defendant in a criminal case is first arraigned remains controlling precedent.  *See Thompson v. Rovella*, 734 F. App'x 787, 789 (2d Cir. 2018); *Santos v. Cross*, 2020 WL 4547307, at *3 (S.D.N.Y. Aug. 5, 2020); *Allen v. City of New York*, 2020 WL 3546883, at *3 (S.D.N.Y. June 29, 2020); *Alvarez*, 2020 WL 1808901, at *3.

I therefore respectfully recommend denying plaintiff's motion to supplement his proposed Fourth Amended Complaint because the claim is untimely and therefore futile. Moreover, if adopted, the reasoning underlying this recommendation would support granting defendants' motion to dismiss the false arrest and false imprisonment claims asserted in Counts One and Two of the Third Amended Complaint.

Finally, although it may not be material to any matter pending before the Court, I recommend denying plaintiff's motion to withdraw.[9]

---

[9] As noted previously, plaintiff claims to have filed the motion to withdraw when he realized that the original motion for leave to file a Fourth Amended Complaint was "defective, in that the Motion does not comply with Local Rule 7.1(a)(2): There was no affidavit attached to the Motion."  However, Local Rule 7.1(a)(2) merely requires that "all motions shall include…A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined."  Local Rule 7.1(a)(3) does require "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion."  Whichever rule plaintiff intended to refer to, it is clear that neither required him to add to an already lengthy docket by filing the motion to withdraw and then re-filing his motion to amend; his first motion was filed with a memorandum, *see* Dkt. 56, and did not require an affidavit because no factual record is necessary to decide a motion to amend a complaint.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motion for leave to file a Fourth Amended Complaint be denied.  I further recommend denying plaintiff's motion to supplement and withdraw.

I note that the reasoning underlying these recommendations supports granting defendants' motion to dismiss plaintiff's claims in his Third Amended Complaint for false arrest (Count One), false imprisonment (Count Two), denial of substantive due process by conducting a reckless investigation (Count Three), and municipal liability (Count Five).  If the Court adopts my recommendation in its entirety, the only claims that would remain are those in the Third Amended Complaint for malicious prosecution (Count Four), fabrication of evidence alleged against defendants Gerlick and Morra respectively (Counts Six and Seven), and denial of a fair trial alleged against defendants Morra and Gerlick respectively (Counts Eight and Nine).

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before September 14, 2020.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　STEVEN M. GOLD
　　　　　　　　　　　　　　　　　United States Magistrate Judge

Brooklyn, New York
August 31, 2020

*U:\\#ECC 2019-2020\\19-cv-2323 Dorsainvil v. City of NY\\19-cv-2323 Dorsainvil R&R FINAL.docx*